CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 23 2018

JULIA C. DUDLEY, CLERK
BY: /s/
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LESTER EUGENE BOWLES,<br>    Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:17-cv-00155 |
| v. | ) <br> ) | **MEMORANDUM OPINION** |
| D. WELLS,<br>    Defendant. | ) <br> ) <br> ) | By:   Hon. Jackson L. Kiser<br>        Senior United States District Judge |

Lester Eugene Bowles, a Virginia inmate proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983 against the sole defendant, Nurse D. Wells. Plaintiff alleges that Nurse Wells was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment of the United States Constitution, at River North Correctional Center ("RNCC"). Nurse Wells filed a motion to dismiss, to which Plaintiff responded, making this matter ripe for disposition. After reviewing Plaintiff's submissions, I grant in part and deny in part the motion to dismiss.

**I.**
**A.**

Plaintiff presents three brief claims in the complaint. Plaintiff first writes, "Deliberat[e] indifference to a serious medical need. In Orientation Manuals[,] insulin is to be giv[en] to insulin dependent diabetics before chow at 5:00 to 6:00 am by night nurse." Plaintiff next writes, "Was told my insulin was changed per doctor signed by Nurse Wells. All papers show wrong doing on medical that is run by Nurse Wells to department is working on insulin problem for 22 month[s] now. Since I been here school chow is more important here than health." Lastly, Plaintiff writes, "Bathroom pass gave by doctor for medical reason and taken back by security not allowed to use pod restroom. Have had to stop taking three meds not allowed to use my toilet but ever[y] hour on the hour when at pod rec[reation] or at programs[.] Being a diabetic[,]

I need to go a lot for fluid reasons as well as medical won't allow access to pod restroom at all." Plaintiff requests $50,000 and equitable relief.

In a letter attached to the complaint, Plaintiff complains, <u>inter alia</u>, that he gets filters, but not new parts and distilled water, for his CPAP machine and does not get inserts for medial shoes. He also complains about correctional officers generally and believes "they" discriminate "against anyone in a wheelchair."

**B.**

Plaintiff also filed grievance records and an operating policy in support of the complaint. In sum, these documents reflect that Plaintiff believes the doctor should not have changed his insulin administration to 7:00 a.m., which was after breakfast instead of before breakfast. Plaintiff argues that "anyone who is a nurse should know you don't eat then take insulin cause[] you [have] to . . . take more."

Nurse Wells responded to an informal complaint in November 2015, noting the change in time and telling Plaintiff, "If you would like to discuss this with the doctor, please submit a request for service." On a request for services form from January 2016, a nurse noted that Plaintiff's insulin order "does not state give before you eat. The order reads just to be given in the morning. When the nurse arrives you have the option to show up or not to show up. This is your choice."

In an informal complaint dated, January 4, 2017, Plaintiff wrote, "For the past months, I've been getting my morning insulin sometimes hours after I've ate. It's hard for me to keep taking it this way. I'm getting dizzy, sick to my stomach, agitated with the highs and lows from taking insulin late in [morning]. . . . [H]aving nothing to eat makes me sick and agitated from highs and lows." Nurse Wells responded a few days later, stating, "A review of your past

2

glucose recordings have shown your sugar to be stable with the exception of two occasions during the past 45 days. You may request sick call to discuss changing your regimen with the doctor."

In an informal complaint dated February 15, 2017, Plaintiff wrote:

> Today ... medical has yet to give me my morning insulin before I eat breakfast. You are const[a]ntly late at giving me my insulin making me sick. You said or changed my order to 7:00 a.m. that still don't happen. . . . Fix this problem. Give me my insulin when I'm supposed to get it.

Nurse Wells responded on March 1, 2017, noting, "The medical department is working with Dr. Stevens to initiate a new insulin and blood sugar schedule."

Plaintiff was informed via a grievance response that all bathroom passes were had been revoked on September 29, 2016. The prison's administration had determined that "[a]n overwhelming amount of offenders were abusing the use of their bathroom pass by entering and exiting their cells numerous times during pod recreation, trading their pass, exchanging passes, etc. placing an enormous burden on RNCC Security Staff."

### C.

In response to the motion to dismiss, Plaintiff filed an unverified four-page letter, prison administrative records, medical records, and product information sheets. Only several of the documents are noteworthy to the legal claims.

Plaintiff wrote an informal complaint on August 31, 2016, stating, "I've asked over and over for new inserts for my boots and shoes. They[ are] supposed to be exchanged every four months. They are way over due. They have broke down and need to be replaced. I was told you had to find a vendor to where you can get them. Still waiting for them." Nurse Wells responded two days later, stating, "You were told that the original mold to make your inserts was destroyed

by the company. You were offered the option of a different vendor. You did not want to pursue."

Plaintiff wrote to Nurse Wells on April 1, 2017, explaining his dissatisfaction "with the results of [the] X rays. I would like a[n] MRI. Something is wrong with my wrist cause it keeps popping in and out and is swollen. Would like to get this checked and fixed." Nurse Wells responded on April 5, 2017, saying, "You will need to see the doctor. Submit a request if you want to be seen."

Plaintiff submitted an informal complaint on April 3, 2017, claiming a need for wrist straps for wrist pain and that the doctor ordered him a treatment for foot fungus. Nurse Wells responded on April 7, 2017, stating, "The wrist braces had to [be] specially ordered and are not here. The doctor did not order anything for foot fungus."

## II.
### A.

I must grant a defendant's motion to dismiss if I determine that the complaint fails to state a claim on which relief may be granted. Resolving this question under the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires me to accept Plaintiff's factual allegations as true.[1] Furthermore, a complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Plaintiff must "allege

---

[1] Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Although I liberally construe pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), I do not act as an inmate's advocate, sua sponte developing statutory and constitutional claims not clearly raised in a complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

4

facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Dismissal under Rule 12(b)(6) is appropriate when, after accepting as true the well-pleaded facts in the complaint and viewing them in the light most favorable to the plaintiff, a court finds with certainty that a plaintiff would not be entitled to relief under any state of facts which could be proved in support of the plaintiff's claim. Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996).

## B.

A plaintiff must describe how a defendant acted with deliberate indifference to a serious medical need to state a claim under the Eighth Amendment for the unconstitutional denial of medical assistance. West v. Atkins, 487 U.S. 42, 48 (1988); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Conner v. Donnelly, 42 F.3d 220, 222 (4th Cir. 1994). A serious medical need is a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier, 896 F.2d at 851-52.

A health care provider may be deliberately indifferent when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. Id. at 851. To succeed with an unconstitutional medical treatment claim against non-treating medical staff, a plaintiff must show that the defendant was personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or was deliberately indifferent to the medical provider's misconduct. Id. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id. Supervisory liability is not established merely by showing that a subordinate was deliberately indifferent to a plaintiff's medical need. Id.

There is nothing in Plaintiff's submissions indicating that Nurse Wells, personally, failed to timely administer the insulin or that Nurse Wells was ever responsible for personally rendering any health care treatment to Plaintiff. Accordingly, the motion to dismiss is granted to the extent Plaintiff seeks to hold Nurse Wells liable for any personal act or omission related to actually injecting insulin into Plaintiff.

Alternatively, the complaint generally alleges that Nurse Wells is responsible, as the nursing supervisor, for a policy or practice permitting insulin to be administered hours after breakfast. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (discussing the deliberate indifference standard for a supervisor's liability under § 1983). Plaintiff's submissions support the inference that it was the nursing policy or practice, and not the doctor's order, that determined when insulin would be administered. As a consequence of this policy or practice, Plaintiff gets "sick" and experiences dizziness, nausea, and agitation.

Laypeople understand diabetics' need for insulin injections and the generally accepted practice of administering insulin to regulate blood sugar before meals versus a practice of trying

6

to bring blood sugar levels down with extra insulin after meals. Given the perspectives required for a motion to dismiss, I cannot find that Plaintiff cannot present a plausible claim for relief about a nursing policy or practice, and I also cannot presently find that Plaintiff merely disagrees with medical personnel on the range of acceptable medical practice. See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). I also cannot accurately gauge the extent of any risk Plaintiff allegedly faces by receiving insulin hours after a meal, and this perspective presently must be resolved in Plaintiff's favor. Accordingly, the motion to dismiss is denied as to the insulin administration policy or practice.

However, the motion to dismiss is granted as to the other claims. Plaintiff fails to state a claim against Nurse Wells about the bathroom pass, CPAP machine, or orthopedic shoes. Even when considering the various documents filed after the complaint, Plaintiff does not identify any way in which Nurse Wells was involved in the taking of his bathroom pass or was deliberately indifferent to his wrist or any compromised performance of the CPAP machine or footwear. Also, Nurse Wells' responses to administrative forms directed Plaintiff to consult with the doctor about these medical issues. Accordingly, Nurse Wells' motion to dismiss must be granted as to these allegations.

### III.

For the foregoing reasons, I grant in part and deny in part Nurse Wells' motion to dismiss.

ENTER: This 23rd day of March, 2018.

Senior United States District Judge