**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **LESTER EUGENE BOWLES,** | ) | **Civil Action No. 7:17CV00155** |
| **Plaintiff,** | ) | |
| | ) | **<u>MEMORANDUM OPINION</u>** |
| **v.** | ) | |
| | ) | **By: Robert S. Ballou** |
| **D. WELLS,** | ) | **United States Magistrate Judge** |
| **Defendant.** | ) | |

Lester Eugene Bowles, a Virginia inmate proceeding <u>pro se</u>, filed a civil rights action

pursuant to 42 U.S.C. § 1983 against Nurse Wells, the former Director of Medical Services at

River North Correctional Center ("RNCC"). Plaintiff's only remaining claim alleges that

Defendant and/or her policies violated his Eighth Amendment rights. Defendant filed a motion

for summary judgment, and Plaintiff responded, making this matter ripe for disposition. After

reviewing the record, I will grant the motion for summary judgment.

**I.**

In Plaintiff's complaint, he asserts that Defendant was deliberately indifferent to a serious

medical need when she violated the orientation manual policy by having nurses administer him

insulin after instead of before the morning meal. In his response to Defendant's motion, Plaintiff

realleged claims that had already been dismissed and generally argued - that Defendant was

negligent, that he had to "fight to get my insulin," and that not having insulin for thirteen hours a

day is "against the law for diabetics." Resp. to the Mot. for Summ. J. 1-3, ECF No. 29; <u>see</u>

Order, ECF No. 20.

Defendant alleges the following. Defendant was the Director of Medical Services from

May 2015 until May 2017 at RNCC. As Director, she coordinated administration of insulin to

diabetic inmates, including Plaintiff. No policy or procedure required diabetic inmates to receive

insulin prior to meals.  Defendant states that it was impossible to administer all medicines before breakfast because the night-nurse performed such duties, and RNCC only staffed one night-nurse at that time.

Nursing staff policy was to monitor diabetic inmates' blood sugar levels and administer appropriate therapeutics, e.g., insulin, to maintain control of their blood sugar levels.  Policy did not require insulin administration prior to meals to provide effective clinical blood sugar control.  Instead, it was acceptable to administer insulin before or after meals.

Defendant admits that the inmate orientation manual mentioned sugar checks occurring before meals: "Diabetic offenders that require fasting blood sugar checks will be seen in the housing units between 4:00 and 5:00 am by the night shift nurse."  River North Corr. Ctr. Orientation Handbook,  at 17, ECF No. 25-2.  However, the handbook also noted there was no requirement that insulin be administered before meals: "All times listed in this manual are approximate and subject to change at Security's discretion."  Id. at 1.

Defendant alleges that the medical staff tried administering the insulin before Plaintiff's meals on multiple occasions, but that Plaintiff frequently refused to wake up.  Defendant asserts that Plaintiff outright refused insulin other times, including on days when the nursing staff attempted to administer insulin before the morning meal.  Wells Aff. ¶ 11, ECF No. 25-1; Exh. C, ECF No. 25-3 (excerpt from Plaintiff's medical record detailing Plaintiff's many refusals of insulin).  Defendant also states that Plaintiff refused to allow nurses to check his blood pressure on multiple occasions and was often non-compliant with his diet in addition to refusing insulin.  Wells Aff. ¶ 12.  Defendant postulates that "his periodic refusals to comply with his dietary

restrictions and his refusing his medications" caused "some variation in his blood sugar readings." Id. at ¶ 13.

Defendant asserts that the medical staff, including the nurses she supervised, monitored Plaintiff's blood sugar levels, diet, insulin administration, and his objective laboratory results, and the records show that Plaintiff's diabetes was not only under control, but showed "marked improvement in 2016." Id. at ¶ 15; Exh. E, ECF No. 25-5. Specifically, Plaintiff's Hemoglobin A1C[1] levels showed improvement in 2016, which was around the same time that Plaintiff complains about post-meal insulin administration.

Lastly, Plaintiff was never referred to a specialist because his sugar levels were stable. Wells Aff. ¶ 17. Referrals are only clinically indicated when blood sugar levels cannot be adequately controlled. Id. Plaintiff's medical record demonstrates that his A1C level declined while at RNCC, which indicated that his diabetes was controlled and improving. Id. at ¶¶ 15, 18. Defendant further asserts that during her time as supervisor, no clinical evidence shows that post-meal, as opposed to pre-meal, insulin administration harmed Plaintiff in any manner. To any extent Plaintiff claims dizziness, agitation, and nausea, Defendant blames Plaintiff's repeated refusals of insulin and noncompliance with his diet. Id. at ¶ 19.

## II.

### A.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over

---

[1] Hemoglobin A1C are readings that are used to assess a patient's blood sugar over time and are a clinically reliable measurement of diabetes management. Wells Aff. ¶ 7.

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 250. In considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. Glover v. Oppleman, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." Id. (quoting Celotex, 477 U.S. at 317).

**B.**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Notably, a plaintiff must sufficiently allege a defendant's personal act or omission leading to a

deprivation of a federal right.  See Fisher v. Washington Metro. Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds by Cty. Of Riverside v. McLaughlin, 500 U.S. 44 (1991).  Negligent deprivations are not actionable under § 1983.  See, e.g., Daniels v. Williams, 474 U.S. 327, 330 (1986); Pink v. Lester, 52 F.3d 73, 77 (4th Cir. 1995).

**C.**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Id. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  In determining whether the law was clearly established, the court "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" Lefemine v. Wideman, 672 F.3d 292, 298 (4th Cir. 2012) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 251 (1999)), vacated on other grounds, 568 U.S. 1 (2012).  The onus is on a defendant asserting qualified immunity to actually put forth authorities and argument showing that he is entitled to it.  Meyers v. Baltimore Cty., Md., 713 F.3d 723, 731 (4th Cir. 2013).

**D.**

A plaintiff must describe how a defendant acted with deliberate indifference to a serious medical need to state a claim under the Eighth Amendment for the unconstitutional denial of medical assistance. West v. Atkins, 487 U.S. 42, 48 (1988). A serious medical need is a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("The evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk."). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier, 896 F.2d at 851-52. However, a prisoner's disagreement with medical personnel over the course of treatment, medical malpractice, and negligence do not state § 1983 claims. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he essential [deliberate indifference] test is one of medical necessity and not simply that which may be considered merely desirable." Bowing v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

## III.

Plaintiff asserts, with minimal factual support, that Defendant violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. Defendant disputed the allegation with affidavits and excerpts from Plaintiff's medical record. The objective evidence before the court negates plaintiff's factual allegations. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) (objective evidence is to be credited on summary judgment when unchallenged); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case.").

First, Plaintiff fails to demonstrate that Defendant was deliberately indifferent. The medical records show that Plaintiff's diabetes was not only under control, but improving. Further, Defendant implemented policies appropriate to the orientation materials and staffing allotment. Therefore, Plaintiff's claim is not cognizable because his disagreement with the timing of the insulin shots is merely a disagreement with medical personnel over the course of treatment. See Wright, 766 F.2d at 849; Bowing, 551 F.2d at 48.

Second, Plaintiff does not demonstrate that the delay in insulin caused substantial harm. "Delay in medical care, without showing substantial harm, does not violate the Eighth Amendment." Smith v. Walker, 845 F. Supp. 2d 673, 677 (W.D.N.C. Feb. 28, 2012) (citing Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993)). Substantial harm may be satisfied by

lifelong handicap, permanent loss, or considerable pain.  Payne v. Wilson, No. 7:17cv00007, 2018 WL 1528220, at *4 (W.D. Va. March 28, 2018).  Plaintiff alleges that he suffered dizziness, nausea, and agitation.  He has not presented any evidence that he suffered lifelong handicap, permanent loss, or considerable pain.

Drawing all disputed facts and reasonable inferences in favor of the Plaintiff, Plaintiff has not demonstrated a genuine dispute of material facts as to whether Defendant was deliberately indifferent in implementing a policy that administered insulin after meals or in generally treating his diabetes.  Therefore, Defendant is entitled to qualified immunity for damages, and I will grant the motion for summary judgment.

## IV.

For the foregoing reasons, Defendant is entitled to qualified immunity for damages, and I will grant Defendant's motion for summary judgment.

Enter:  March 26, 2019

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge